## Elizabethtown Trust Co. v. Weaver

Brown & Zimmerman, for plaintiff.

Henry F. Gingrich, for petitioner.

Arnold, Bricker, Beyer & Barnes and Henry Rutherford, for defendant.

JOHNSTONE, J., November 13, 1959.—Defendant, Theodore R. Weaver, on September 1, 1954, executed

and delivered to plaintiff, Elizabethtown Trust Company, a mortgage and bond in the principal sum of $19,000, covering premises known as 45 West High Street and 408 Groff Avenue, Elizabethtown, and payable one year after date. Judgment was entered on the bond accompanying the mortgage and execution was issued for the balance of $10,000 remaining due, together with interest from April 1, 1959, at five percent per annum. According to instructions from plaintiff, the sheriff levied only on the High Street property and advertised the same for sale on August 14, 1959.

Prior to the sheriff sale, the wife of defendant, Naomi E. Weaver, presented her petition to this court in which she averred that the scheduled sheriff sale was not a bona fide sale but was merely a device to extinguish or bar her intestate right in the real estate proposed to be sold. A rule was granted on plaintiff to show cause why the sheriff sale as to the premises in question should not be stayed and the writ of execution set aside. Depositions of the parties in interest have been taken and the case was argued before the court en banc.

In addition to the foregoing, the depositions further reveal that defendant and petitioner were married on August 1, 1925, and separated in 1946. Title to the premises in question was taken in the sole name of defendant about 1939. Petitioner contributed a small part of the purchase price and worked full time until 1944 and part time thereafter with defendant in the conduct of the restaurant business at the High Street property until the separation. An attempt was made in 1954 or 1955 to have petitioner execute a deed for the property to Cecil Weaver for the consideration of $27,000, but she refused to sign the deed until she knew what portion of the purchase price she was to receive. In a fruitless effort to persuade petitioner to sign the deed, she was told by defendant's attorney

that if she didn't sign the deed, the property could be "sheriffed" out from under her.

On behalf of plaintiff-bank, it was testified defendant received the full consideration stated in the mortgage and used the proceeds in the purchase of the Groff Avenue property. Defendant made monthly payments of $100 on the mortgage until February 1959, when he told plaintiff he would make no further payments. According to the treasurer of plaintiff, the bank was not "eager to issue execution" but did so because of defendant's refusal to make further payments and because counsel for defendant urged the bank by letter dated June 17, 1959, to issue execution and assured the bank that there was a firm commitment to bid $19,000 for the High Street property at the sheriff sale. Defendant's attorney at this time was the same attorney who tried to persuade petitioner in 1954 or 1955 to sign a deed conveying the property. The value of the two properties covered by the mortgage is approximately $40,000, and the rents received from the High Street property are $150 per month. Defendant testified that he was no longer financially able to make the monthly mortgage payments and that is why he stopped.

It is obvious that the mortgage foreclosure would extinguish petitioner's intestate rights in the real estate and that defendant stands to benefit thereby. It is also obvious that defendant would take some affirmative action to prevent the foreclosure or to refinance the mortgage if it was not his desire to have the property sold at sheriff sale. We cannot escape the conclusion that defendant selected this method of selling the High Street property in order to avoid the necessity of having his wife join in the deed. However, whatever defendant's motive might be, he had the right to mortgage his property without the joinder of his wife and

in this instance did mortgage his property and received full consideration therefor. The facts here are not similar to the facts in Cancilla v. Bondy, 353 Pa. 249, where the owner mortgaged his property without consideration. In that case the court said, at page 252:

"With real estate, however, the situation is entirely different because a wife has an inchoate interest in her husband's real property; therefore, while he may mortgage such property if the transaction is bona fide and for a consideration, he cannot deprive his wife of her dower rights, without her consent, by creating a voluntary mortgage or judgment, since the giving of such a mortgage or judgment would be equivalent to a pro tanto conveyance of the real estate in fraud of her dower rights."

We are not inclined to place a stamp of approval on plaintiff's action of instructing the sheriff to levy on only one of the two properties covered by its mortgage. There is no question that the bank had the right to do this but the procedure was that urged by defendant and not the independent determination of the bank. No one questions the validity of plaintiff's mortgage and since the obligation is past due, its right to realize the balance due of the security it holds is absolute, regardless of whether the effect is to extinguish petitioner's intestate rights in the real estate. If defendant withheld payments on the mortgage and induced plaintiff to issue execution for the purpose of defrauding petitioner out of her intestate rights, she cannot obtain relief in a proceeding of this kind where the validity of the mortgage is the only issue.

And now, November 13, 1959, for the reasons herein stated, the petition to stay the sheriff sale of the premises known as 45 West High Street, Elizabethtown, is set aside, the execution is refused and the petition is dismissed.